**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JAMES LEE SONS, individually and
on behalf of the wrongful death beneficiaries
of JAMES ALLEN PARKS SONS, deceased;**

                   **Plaintiffs,**

            **CIVIL ACTION NO.** 3:16cv181-MPM-SAA

**v.**

**BENTON COUNTY, MISSISSIPPI;
A. A. "ARNIE" MCMULLEN, in his individual capacity
and his official capacity as Sheriff of Benton County,
Mississippi; DEPUTY JOE BATTS, individually;
DEPUTY JOHNNY STANTON, individually;
and JOHN DOES 1-10**          **Defendants.**

## COMPLAINT

*JURY TRIAL REQUESTED*

  COMES NOW, Plaintiff, James Lee Sons, individually and on behalf of the wrongful death beneficiaries of James Allen Parks Sons ("hereinafter collectively referred to as "Plaintiffs") by and through their attorneys, and hereby commences this civil action against Defendants for the wrongful death of James Allen Parks Sons (hereinafter "Mr. Sons").

### PARTIES

  1.  James Lee Sons is an adult resident citizen of Ashland, Benton County, Mississippi. Plaintiff is the biological father of Mr. Sons and brings this action individually and on behalf of the wrongful death beneficiaries of James Allen Parks Sons, deceased.

2. Defendant Benton County, Mississippi, is a political subdivision of the State of Mississippi which may be served with process through Mr. Ricky Pipkin, the President of the Board of Supervisors for Benton County, Mississippi, 190 Ripley Avenue, Ashland, Benton County, Mississippi. Defendant Benton County operates and maintains a law enforcement agency known as the Benton County Sheriff's Department which is responsible for the operation of the Benton County jail. At all times pertinent hereto, Benton County acted under the color of state law or custom.

3. At the time of Mr. Son's death in September of 2015, Defendant A.A. "Arnie" McMullen (hereinafter "McMullen") was the duly elected Sheriff of Benton County, Mississippi, a Benton County official, the official law enforcement policymaker for Benton County, Mississippi, and pursuant to Mississippi statutory law and custom, the chief jailor of and for Benton County, Mississippi. Defendant McMullen was also responsible for the hiring, supervision, training, discipline and control of persons working for the Benton County jail, including persons directly responsible for the provision of mental health and psychiatric treatment and services to detainees in the custody of the Benton County jail. Upon information and belief, Defendant McMullen is an adult resident citizen of Benton County, Mississippi and may be served with process where found.

4. Defendant Deputy Joe Batts, upon information and belief, was at all times material hereto a duly appointed jailor for the Sheriff's Department of Defendant Benton County and as such was employed, supervised and controlled by Benton County.

5. Defendant Deputy Johnny Stanton, upon information and belief, was at all times material hereto, a duly appointed jailor for the Sheriff's Department of Defendant Benton County and as such was employed, supervised and controlled by Benton County.

6. JOHN DOES 1-10, whether singular or plural, being the persons, entities and/or corporations individually and jointly responsible and liable for the actions and inactions leading up to and including the death, of Mr. Sons, all of whose true names and legal identities are otherwise unknown to Plaintiffs at this time, but will be added by amendment when ascertained.

**JURISDICTION AND VENUE**

7. Venue lies with this Court pursuant to 28 U.S.C. § 1391, as all the Defendants are residents of this judicial district and all the acts or omissions given rise to this suit occurred within this district.

8. Jurisdiction lies with this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a) because this action is brought pursuant to 42 U.S.C. § 1983 for deprivation of the rights, privileges and immunities secured for the deceased, Mr. Sons, by the Constitution and laws of the United States of America.

**FACTS**

9. At all pertinent times, each Defendant was acting under the color of state law or custom.

10. On or about September 18, 2015, Plaintiff, James Sons, petitioned the Chancery Court of Benton County, Mississippi for the civil commitment of his twenty (20) year old son (Mr. Sons) due to concerns for his safety. Plaintiff stated in the affidavit filed in support of his

petition that he believed that Mr. Sons was in need of mental health treatment and posed a likelihood of physical harm to himself and /or others. He further stated that Mr. Sons had recently attempted or threatened to physically harm himself and/or others and that based on his treatment history or other relevant evidence, Mr. Sons was in need of treatment to prevent further disability or deterioration which would predictably result in dangerousness when his current mental illness limited or negated his ability to make an informed decision to seek or comply with recommended treatment. In further support of Plaintiff's petition, Plaintiff detailed the following specific behaviors recently exhibited by Mr. Sons: keeping guns loaded, suicidal, self-danger and threats, threats to family and others, damaging property, does damage to himself, threatening to shoot police and others, and loud yelling behavior.

11. Based upon Plaintiff's petition, on September 18, 2015, the Benton County Chancery Court issued a Writ to the Benton County Sheriff to Take Custody of Mr. Sons and further ordered that Mr. Sons be held at the Benton County Jail pending further mental health evaluation and treatment.

12. Accordingly, Mr. Sons was taken into custody by the Benton County Sheriff's Department at 1:45 p.m. on September 18, 2015 and delivered to the Benton County Jail at 1:50 p.m. the same day. Plaintiff was assured by Benton County officials that his son would be safe in their custody.

13. Upon information and belief, upon arrival at the Benton County Jail, Mr. Sons was initially placed in a holding cell with four detainees (jail trustees).

14. During the hours that followed, Mr. Sons requested that jail personnel place him into a separate holding cell by himself. In keeping with his request, Mr. Sons was given a

blanket and moved to the juvenile detention cell known as "Cell Block J", where he was left alone and completely isolated from other detainees.

15. Despite Defendants' knowledge that Mr. Sons was a suicide risk, that Sons had threatened to harm himself, and that Sons was being held in jail pending mental health evaluation and treatment, Defendants did not place Mr. Sons on suicide watch, monitor Mr. Sons, or employ any other precautionary measures to protect Mr. Sons from self-destructive behavior.

16. The detention cell in which Mr. Sons was placed contained a set of bunk beds, a sink, and a urinal. There was no window looking into (out outside) his holding cell—only a food slot used to provide meals to him. The inside of the cell was equipped with working video surveillance, as was the hallway outside of the cell.

17. On September 19, 2015 at approximately 11:30 a.m., Mr. Sons took the blanket provided to him by the Benton County jail, tore it into strips, and crafted a noose. He threaded the blanket through a hole in the top bunk bed, secured it to the bed frame, wrapped the noose around his neck, and hung himself. Approximately an hour transpired from the time that Mr. Sons began constructing the noose until the time he was discovered by a jail trustee who was delivering lunch through the food slot of Son's holding cell. The entire event was recorded on the video surveillance camera inside of Mr. Son's holding cell.

18. Upon information and belief, Benton County jail had a suicide watch policy and procedure in place at the time of Mr. Son's incident, but it was wholly ignored and/or inadequate to protect detainees such as Mr. Sons.

19. In addition, Defendants Benton County and McMullen failed to train jail personnel in proper suicide watch procedures.

–5–

20. During the period of time that Mr. Sons was in the custody of the Benton County jail, Defendants Benton County, McMullen, Joe Batts, Johnny Stanton, and John Does 1-10 utterly failed to:

    A. Provide Mr. Sons with medical and/or mental health evaluation and treatment;

    B. Properly monitor Mr. Sons;

    C. Place Mr. Sons in a lunacy or medical cell;

    D. Place Mr. Sons on "suicide watch", despite having knowledge of his stated desire to cause harm to himself,

    E. Utilize proper monitoring procedures which would have made it possible for observers stationed in the jail to remotely monitor the safety of Mr. Sons while he was in the holding cell; and,

    F. Take adequate precautions despite knowing of his threats to injure himself, and remove objects from Mr. Sons person and/or the holding cell that could enable him to inflict serious harm upon himself, e.g., the blanket used to hang himself.

21. Defendants acted with deliberate indifference to Mr. Sons' dignity as a human being and to his constitutional and statutory rights.

22. As a direct and proximate result of the acts and omissions of Defendants, Mr. Sons' mental infirmity went untreated and/or improperly treated; Mr. Sons was inadequately supervised and cared for; Mr. Sons suffered extreme distress, agitation, anguish and

hopelessness; and, on or about September 19, 2015, he hung himself to death using the blanket provided to him by Benton County jailors by securing it to the upper bunk bed frame inside of the holding cell where he had been placed and left completely isolated and unsupervised.

23. Defendants wrongfully deprived Mr. Sons of his clearly established rights, privileges and immunities guaranteed to him by the United States Constitution, especially Mr. Sons' rights as a civil commitment detainee, to both the procedural and substantive due process guarantees of the Fourteenth Amendment. Accordingly, Plaintiffs have a cause of action against Defendants pursuant to 42 U.S.C. § 1983.

24. As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Mr. Sons sustained physical injuries which resulted in his death, and Mr. Sons experienced physical, mental and emotional pain and suffering prior to his death and suffered the loss of his enjoyment of life.

25. Plaintiffs have suffered the untimely end of their relationship with their son/brother, with the corresponding loss of his society, companionship, comfort, guidance, counsel and advice. In addition, the Plaintiffs have also incurred attorney's fees and expenses for which they should be compensated.

26. Pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, Plaintiffs seek a judgment against Defendants to recover damages for the injuries set forth above.

27. The acts and omissions described herein constitute an unconstitutional policy, practice and/or custom of Defendant Benton County, created or retained by Defendant McMullen and/or other policy makers within the Defendants' organization, as it relates to protecting the health and safety of detainees at the Benton County jail, and such other acts of

malfeasance and misfeasance relating to the Benton County jail's suicide risk protocols and procedures; including, but not limited to the failure of Benton County to adequately supervise and train its officers and jailors regarding Benton County's suicide risk protocols and procedures so that further constitutional violations as herein described could be prevented.

28. Defendants Desoto Benton County and Defendant McMullen were deliberately indifferent in failing to establish and maintain policies, practices and procedures for hiring, training, supervising and retaining qualified jail personnel.

29. The failure of Defendant Benton County and/or McMullen to adequately train and/or supervise Benton County Sheriff's Department personnel derived from inadequate and constitutionally deficient hiring, retention, training, and supervision procedures. The risk of bodily harm and/or suicide of Mr. Sons was reasonably foreseeable by Defendant Benton County inasmuch as there had been other suicide/attempted suicide incidents that had occurred within the jail and personnel at the jail had been informed of Mr. Sons' express desire to harm himself.

30. Benton County failed and/or refused to adequately construct, maintain, repair and/or refurbish the physical facilities at the Benton County jail, including, but not limited to the holding cells, monitoring systems, medical facilities, restraint systems, so as to prevent an environment suitable for events such as the suicide of Mr. Sons.

31. As a result of Benton County's failure to adequately construct, maintain, repair and/or refurbish the physical facilities at the Benton County jail, Mr. Sons, a known suicide risk, was left unattended and unmonitored in a holding cell where he ultimately took his own life.

32.     Plaintiffs are entitled to all relief allowed under 42 U.S.C.§ 1983, the Mississippi Wrongful Death statute and Mississippi common law including, but not limited to, monetary damages, damages for loss of enjoyment of life, punitive damages and an award of attorney's fees and costs.

### COUNT ONE – WRONGFUL DEATH

33.     Paragraphs 1 through 32 are incorporated herein by reference as though fully set forth.

34.     Plaintiffs claim damages for the wrongful death of Mr. Sons and for their loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and for Mr. Son's loss of enjoyment of his life and for the conscious pain and suffering he endured under 42 U.S.C. § 1983 and the Mississippi Wrongful Death Statute.

**WHEREFORE THE PREMISES CONSIDERED,** Plaintiffs pray for a judgment against the Defendants, jointly and severally, for compensatory and punitive damages in the amount to be determined by a struck jury, including reasonable attorney's fees and expenses of this action, and for all such further relief, both general and specific, to which they may be entitled.

THIS, the 4TH day of August, 2016.

BY:     */s Philip A. Stroud*  
          PHILIP A. STROUD, ESQ. (99401)  
          Attorney for Plaintiffs

**OF COUNSEL:**

**THE STROUD LAW FIRM, P.C.**
**5779 Getwell Rd., Ste. C-1**
**Southaven, MS 38672**
**(662) 536-5656**