**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

JAMES LEE SONS, individually, and on
behalf of the wrongful death beneficiaries
of JAMES ALLEN PARKS SONS, deceased                     **PLAINTIFF**

**VS.**                               **CIVIL ACTION NO.  3:16 –CV-181-MPM-RP**

**BENTON COUNTY, MISSISSIPPI, ET AL.**                    **DEFENDANTS**

**REBUTTAL TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**<u>INTRODUCTION</u>**

In his Memorandum in Support of his Response in Opposition to the Defendants' Motion for Summary Judgment [doc. # 66], the Plaintiff makes two essential arguments. First, the Plaintiff argues that each of the individual Defendants in this case were subjectively aware that Jimmy Sons ("Sons") was a suicide risk, but that each acted with deliberate indifference to this risk, which in turn resulted in Sons' death.

Next, the Plaintiff argues that the policy in place at the Benton County Jail for the monitoring of mental commitments, or any other individual who was at risk of self-harm, was constitutionally inadequate.   As such, the Plaintiff contends that *Monell* liability exists in this case, and that Defendant Sheriff Arnie McMullen ("Sheriff McMullen") may also be held individually liable for failing to adopt a constitutionally acceptable policy for monitoring mental health commitments and/or suicidal prisoners.

As for the first argument, the individual Defendants do not contend that there is no evidence of subjective knowledge of a suicide risk.  The individual Defendants simply contend that their actions in this case do not rise to the level of deliberate indifference, which is an

extremely high burden of proof for the Plaintiff to meet. Without proof of deliberate indifference, there can be no proof of a constitutional violation in this case.

As for the second argument, if there is not a constitutional violation in this case, there can be no *Monell* liability. Even if this Court were to find evidence of an underlying constitutional violation, each of the individual Defendants testified that the unwritten policy and custom at the Benton County Jail required that Sons be placed in isolation and continuously monitored by closed circuit video feed. The policy was followed in this case. The dispatcher, Missy Campbell, simply failed to alert Johnny Stanton ("Stanton") to Sons' actions during the lunch period.

Along these same lines, there is certainly no evidence that the County policymaker for the Jail, Sheriff McMullen, subjectively knew that this policy was defective. The policy had in fact prevented an earlier attempted suicide when jailors saw on video a prisoner attempting to commit suicide and were able to intervene in time. (Ex. 10 to MSJ, p. 13).

Finally, as for the allegation that Sheriff McMullen should have changed the policy to prevent individuals in the J cell from obtaining a blanket based on a previous suicide many years ago, said allegation is misleading. It is undisputed that after this previous suicide, Sheriff McMullen modified the cell to remove the obvious tie off point, which was jail bars located high off the ground. In this case, there is no evidence that Sheriff McMullen or any other jail employee were subjectively aware that an individual could hang himself in the manner in which the Plaintiff did. Again, the Plaintiff hung himself using a tie off point that was approximately four (4) feet off the ground

For these reasons, all of the Defendants are entitled to summary judgment.

## REBUTTAL ARGUMENT

Before this Court can decide whether or not material issues of fact exist in this case, it must first determine the applicable legal standard.  Despite the Plaintiff's arguments regarding Youngberg v. Romeo, 4578 U.S. 307 (1982), in the Fifth Circuit, jail suicide cases are analyzed using the subjective deliberate indifference test set forth in Hare v. City of Corinth, 74 F.3d 633, 647-48 (5th Cir. 1996) ("Hare II").  *See e.g.* Flores v. County of Hardeman, 124 F.3d 736 (5th Cir. 1997).    Under the *Hare II* standard, the Plaintiff must show that (1) each individual defendant had subjective knowledge of a substantial risk that Sons might commit suicide and (2) responded to that risk with deliberate indifference.    Hare II, 74 F.3d at 650. Deliberate indifference requires that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir 2001) (citing Hare II, 74 F.3d at 643, 649-50). An officer's alleged negligence or gross negligence in response to a substantial risk of serious harm is insufficient to support a showing of deliberate indifference.    Thompson, 245 F.3d at 458-59 (citing Hare II, 74 F.3d at 645, 649).

Using the *Hare II* standard, this Court must determine whether or not the Plaintiff can overcome the qualified immunity defense for each individual defendant, and whether the Plaintiff can proceed with his *Monell* claim against Benton County.

### A.    All of the Individual Defendants are entitled to qualified immunity.

The qualified immunity analysis requires two steps.  Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008).  First, the Court is to determine whether evidence exists that the individual

Defendants violated Sons' constitutional rights. In this case, that means that the Plaintiff has to satisfy the *Hare II* standard.

If sufficient evidence of a Constitutional violation is found within the record, the Court next considers whether the defendant's actions "were objectively unreasonable in light of clearly established law at the time of the conduct in question." Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007); see also Thompson v. Upshur County, Texas, 245 F.3d 447, 456 (5th Cir. 2001). A defendant's actions are deemed to be "objectively reasonable" unless all reasonable officials in the defendant's circumstances would have known that the conduct at issue violated clearly established law. Thompson, 245 F.3d at 457.

### 1.    Joe Batts

The Plaintiff has failed to come forward with sufficient evidence satisfying the second prong of the *Hare II* test in relation to the claims against Joe Batts ("Batts"). While there is evidence that Batts was subjectively aware that Sons was a suicide risk based on his conversation with the Plaintiff, there is insufficient proof that Batts acted with deliberate indifference. It is undisputed that Batts told jail staff that Sons was a mental commitment, that he could harm himself, and that he would need to be watched closely.

The only evidence that Plaintiff cites to in relation to Batts is Stanton's testimony that Batts never told him Sons was a suicide risk. However, the Fifth Circuit has never held that the failure of a supervisory jail official to instruct employees to maintain a suicide watch alone can rise to the level of deliberate indifference. Langford v. Union County, 2002 U.S. App. Lexis 29631, *10-11 (5th Cir., October 18, 2002, No. 01-60716).

Under applicable Fifth Circuit precedent, the alleged failure of Batts to give Stanton the "full story" does not rise to the level of deliberate indifference as a matter of law. Hyatt v. Thomas, 843 F. 3d 172, 180 (5th Cir. 2016).

**2.    Johnny Stanton**

Based on what Stanton was told by Batts, there is at least some evidence that Stanton was subjectively aware of the possibility that Sons could harm himself. Just like the claim against Batts, however, the Plaintiff has not come forward with evidence that Stanton acted with deliberate indifference in the face of such knowledge.  Stanton testified that he did continuously monitor Sons. While it would be impossible for him to keep his eyes on the monitor at all times, he testified that he watched the video screen as much as possible until he had to assist with the lunch service.

The Plaintiff's sole response to this testimony is that Stanton is lying.  This assertion is based on pure speculation and does not meet the burden of proof required to overcome the defense of qualified immunity.

Regardless of what Stanton did or did not do, the video tape establishes that Sons committed suicide during the lunch period when it was not Stanton's responsibility to monitor the video feed.  We know this because one of the trusties at the Jail, a prisoner named Donnie Richmond, testified that he saw Sons looking out of the J Cell window. At that time, Richmond and fellow trusty James Beeler, who had been outside washing one of the patrol cars, had just reentered the Jail at the instructions of Stanton to begin the lunch service process. (Ex. 8 to MSJ, p. 8).  This testimony from Richmond, who has absolutely no reason to lie, is corroborated by the video itself which shows Sons looking out the window of his cell at 11:28 am.

5

This means that that the trusties and Stanton began the process of serving lunch at 11:28 am. Stanton would not have been at his desk in a position to observe Sons on the video monitor during the six (6) or seven (7) minutes it took for Sons to kill himself.

The only possible way the Plaintiff could prove that Stanton acted with deliberate indifference would be to show that Sons began making preparations to kill himself prior to the time the lunch service began at 11:28 a.m., that Stanton saw these actions on the video feed, but ignored them. Even when looking at the video tape in a light most favorable to the Plaintiff, Sons' actions do not appear to be out of the ordinary in any way shape or form prior to 11:30 am. And there is certainly no evidence that Stanton saw the Plaintiff behaving erratically and chose to ignore it.

Finally, in the sections of his brief that deal with Stanton's actions, the Plaintiff spends most of his time arguing that Stanton should have done various things differently under the circumstances. Even if that were true, that is evidence of negligence, not deliberate indifference. The Plaintiff cannot show that Stanton consciously, wantonly, and subjectively intended for Sons to kill himself.

### 3. Sheriff McMullen

While there is no evidence that Sheriff McMullen ever met Sons or the Plaintiff until after Sons committed suicide, the audio recording of the call between Sheriff McMullen and the Benton County Jail dispatcher is evidence that McMullen was at least aware that Sons was in isolation the night of September 18th. However, even if this Court were to assume that McMullen was subjectively aware of Sons' risk of self- harm, this does not mean that there is evidence of deliberate indifference. McMullen is not a jailor and it is undisputed that he played

no role in the monitoring process. If it was not McMullen's job to monitor Sons, then his knowledge of Sons' risk of suicide on the night of the 18th is irrelevant.

The Plaintiff knows this. That is why the Plaintiff's main point of contention is that Sheriff McMullen can be held personally liable not for failing to monitor or "help" Sons, but for failing to implement a constitutionally sufficient policy in the first place. While it is true that in certain limited circumstance's a policymaker can be held individually liable for failing to adopt appropriate policies, the Plaintiff must still show that the failure to adopt the policy rises to the level of deliberate indifference. The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987). There has to be proof that McMullen knew that the policy in place was deficient because it had failed to protect other mental commitments. There is no evidence that McMullen knew that the policy was defective. In fact, the policy had thwarted another attempted suicide at the jail.

And while it is true that many years ago another prisoner hung himself in the J Cell, that prisoner used an obvious tie off point: jail bars that were high off of the ground. After this incident, Sheriff McMullen removed the jail bars. There is no evidence in this case that McMullen subjectively knew that an inmate in the J Cell could hang himself using a tie off point approximately four (4) feet off the ground. For this reason, implementing a policy that allowed individuals housed in the J Cell to have a blanket or bed sheet does not amount to a constitutional violation. Without evidence that McMullen subjectively knew his policy was defective, he cannot be held individually liable in this case.

As for the second prong of the qualified immunity analysis, McMullen is also entitled to qualified immunity since it was not clearly established at the time Sons committed suicide that pretrial detainees have a right to the implantation of suicide prevention protocols per the holding

in <u>Taylor v. Barkes</u>, 135 S. Ct. 2042, 2043 (2015). In order to overcome the defense of qualified immunity, the Plaintiff must cite specific cases which require McMullen to adopt specific suicide prevention protocols. There is no such case because there is no uniform standard in the Fifth Circuit as to what polices are constitutionally permissible. Jails across the region differ on how they deal with at risk prisoners. While it is true that McMullen cannot ignore problems with a policy once he subjectively learns of those problems, there is no requirement that he implement specific protocols like face to face visual checks or the removal of sheets or blankets.

      **B.**     **There is no *Monell* liability in this case.**

In order to proceed with his case against Benton County, the Plaintiff must present sufficient evidence that (1) a policy or custom existed, (2) the governmental policy makers actually or constructively knew of its existence, (3) a constitutional violation occurred, (4) and the custom or policy served as the moving force behind the violation." <u>Meadowbriar Home for Children, Inc. v. Gunn</u>, 81 F.3d 521, 533 (5th Cir. 1996); <u>see also</u> <u>Bustos v</u>. <u>Martini Club, Inc</u>., 599 F.3d 458, 467 (5th Cir. 2010). "The unconstitutional conduct must be directly attributable to the municipality [or County] through some sort of official action or imprimatur." <u>Piotrowski v. city of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

The policy at issue in this case is not the written policy that the Plaintiff takes so much issue with, since this policy only deals with what to do after an inmate attempts suicide at the Jail. The policy at issue in this case is the unwritten policy and custom at the Jail which requires that all mental commitments be isolated in the J cell and continuously monitored as much as possible *via* closed circuit video feed by either the jailor on duty, or when he is attending to other matters, the dispatcher. While it is true that it would be impossible for the Jailor or the dispatcher to watch the video every second of the day, they are taught to watch the video as much as they

8

possibly can, because it is assumed that every mental commitment is a risk. (Ex. 10 to Motion for Summary Judgment, pages 69-70).

As for the second prong, there is obviously evidence that Sheriff McMullen knew of the existence of this policy, since he was the one who implemented the policy.

It is prongs 3 and 4 of the analysis, however, wherein the Plaintiff comes up short. Prong 3 requires proof of a constitutional violation. As shown above, since none of the actions of the individual Defendants rise to the level of deliberate indifference, there can be no constitutional violation.

As for the 4th prong, there is no evidence that the policy in place caused Sons to suffer a constitutional deprivation. For example, there is nothing about the policy which would have allowed Stanton not to monitor the video feed. There is nothing about the policy which would have allowed the dispatcher not to monitor the feed. As long as the jail staff follows the policy, the policy works, just like it worked in the past.

## CONCLUSION

For the above reasons, the Defendants are entitled to summary judgment. They respectfully request that the Court dismiss the Plaintiff's claims with prejudice.

Respectfully submitted, this the 3rd day of July, 2017.

<div style="margin-left:40%">

CLAYTON O'DONNELL, PLLC
1300 Access Road, Suite 200
P.O. Drawer 676
Oxford, MS 38655
Telephone: (662) 234-0900
Facsimile: (662) 234-3557

*s/ S. Ray Hill, III*
**S. RAY HILL, III, MSB# 100088**
rhill@claytonodonnell.com

</div>

9

## CERTIFICATE OF SERVICE

I, S. Ray Hill, III, hereby certify that on July 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*s/ S. Ray Hill, III*
**S. RAY HILL, III, MSB# 100088**